# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL TEPPER and REBECCA RUFO-TEPPER, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>SANTANDER BANK, N.A., and DOES 1 through 10, inclusive,<br><br>      Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Daniel Tepper and Rebecca Rufo-Tepper ("Plaintiffs"), individually and on behalf of all other similarly situated persons (the "Class," defined below), bring this action, based upon personal knowledge as to themselves and on information and belief as to all other matters, against Santander Bank, N.A., and DOES 1 through 10, inclusive (collectively, "Defendant"), and allege as follows:

## NATURE OF THE ACTION

1. This is a class action based on Defendant's violation of New York General Obligation Law § 5-601 ("NY Gen. Oblig. Law § 5-601"), which requires a mortgage lender making a loan secured by a one-to-six family residence located in New York to pay the borrower a minimum of 2% simple interest for money received in advance from the borrower for tax and insurance that is held by the lender in an "escrow" account until payment is due. As alleged herein, Plaintiffs have paid tens of thousands of dollars into an escrow account but have received no interest on those payments.

2. Plaintiffs and the Class (defined below) bring this action for damages, restitution and reimbursement, as well as injunctive and declaratory relief, pursuant to claims for breach of contract and unjust enrichment.

## JURISDICTION AND VENUE

3. Venue in this District is proper pursuant to 18 U.S.C. § 1391(b)-(c) because the Defendant conducts business in this District and is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. Defendant's contacts with this District are also sufficient to subject it to personal jurisdiction.

4. The aggregate amount in controversy exceeds $5 million (exclusive of interest and costs), and at least one class member (as well as the Plaintiffs themselves) is a citizen of a

1

different state than that of Defendant; hence there is at least minimal diversity between the parties.  In addition, there are well over 100 plaintiffs in the expected Class.  Therefore, jurisdiction is present under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 (CAFA).

## PARTIES

5. Plaintiffs are, and at all times relevant hereto were, residents and citizens of Westchester County, New York.

6. Defendant Santander Bank, N.A. is a wholly-owned subsidiary of Santander Group, a Spanish multinational bank founded in 1857.  Defendant offers a wide range of loan products, including fixed- and adjustable-rate mortgages.  Defendant is incorporated in the state of Delaware and is headquartered in Boston, Massachusetts.  Through its numerous branches throughout New York and the United States, Defendant enters into mortgage agreements with customers for the financing of their homes.

7. The true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such defendants by such fictitious names.  Each of the defendants designated herein as DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of Court to amend the Complaint to reflect the true name and capacities of the defendants designated herein as DOEs when such identities become known.

## SUBSTANTIVE ALLEGATIONS

8. Defendant, like many mortgage lenders, maintains escrow accounts for its customers, which it sometimes requires as a condition of the loans it extends to customers.  With such accounts, Defendant collects from the borrowing party the projected amount that the borrower will owe for tax and insurance on the mortgaged property, as well as additional

"cushion" amounts to the extent allowed under the Real Estate Settlement and Procedures Act ("RESPA"). When due, Defendant directly pays the taxes and insurance on the borrower's mortgaged property from the escrow account. Meanwhile, Defendant controls the escrow account and has full use of all money deposited into it.

9. Because the funds paid into an escrow account remain *the borrower's money*, New York law requires all "mortgage investing institutions" to pay at least 2% interest on such funds,[1] pursuant to NY Gen. Oblig. Law § 5-601, which states as follows:

> § 5-601. Interest on deposits in escrow with mortgage investing institutions:
>
> Any mortgage investing institution which maintains an escrow account pursuant to any agreement executed in connection with a mortgage on any one to six family residence occupied by the owner or on any property owned by a cooperative apartment corporation, as defined in subdivision twelve of section three hundred sixty of the tax law, (as such subdivision was in effect on December thirtieth, nineteen hundred sixty), and located in this state shall, for each quarterly period in which such escrow account is established, credit the same with dividends or interest at a rate of not less than two per centum per year based on the average of the sums so paid for the average length of time on deposit or a rate prescribed by the superintendent of financial services pursuant to section fourteen-b of the banking law and pursuant to the terms and conditions set forth in that section whichever is higher.

10. Numerous other states in which Defendant is registered to do business have similar laws requiring that interest be paid on escrow accounts, including those included in the definition of the "Multi-State Class" below.

11. § 14-b(5) of the New York State Banking Law defines a "mortgage investing institution" as "any bank, trust company, national bank, savings bank, savings and loan

---

[1] On January 19, 2018, the Superintendent of the Department of Financial Services issued an Order under Section 12-a of the New York State Banking Law with respect to the interest required to be paid on escrow accounts established in connection with loans secured by one-to-six family owner-occupied residences or any property owned by a cooperative apartment cooperation. Under the new rule, the rate must be at least equal to the lesser of 2.00% or the 6-month yield on U.S. Treasury securities on the last business day of the preceding calendar quarter.

3

association, federal savings and loan association, private banker, credit union, investment company, insurance company, pension fund, mortgage company or other entity which makes, extends or holds a mortgage on any one to six family residence occupied by the owner or any property owned by a cooperative apartment corporation . . . and located in this state."

12.     § 14-b(6) of the New York State Banking Law defines an "escrow account" as "any account established pursuant to an agreement between a mortgagor and a mortgage investing institution whereby the mortgagor pays to the mortgage investing institution or his designee amounts to be used for the payment of insurance premiums, water, rents or any similar charges, and shall also include real property tax escrow accounts . . . ."

13.     Iowa law requires lenders to pay interest earned on escrowed funds pursuant to Iowa Code § 524.905(2), which provides in pertinent part that:

> A bank may include in the loan documents signed by the borrower a provision requiring the borrower to pay the bank each month in addition to interest and principal under the note an amount equal to one-twelfth of the estimated annual real estate taxes, special assessments, hazard insurance premium, mortgage insurance premium, or any other payment agreed to by the borrower and the bank in order to better secure the loan.  The bank shall be deemed to be acting in a fiduciary capacity with respect to these funds.  A bank receiving funds in escrow pursuant to an escrow agreement executed on or after July 1, 1982 in connection with a loan as defined in section 535.8, subsection 1, *shall pay interest to the borrower on those funds*, calculated on a daily basis, at the rate the bank pays to depositors of funds in ordinary savings accounts.

(Emphasis added).

14.     Utah law requires lenders to pay interest earned on escrowed funds pursuant to Utah Code Ann. § 7-17-1 *et seq.*, including § 7-17-3(1) and 7-17-3(1)(a) which provides in pertinent part that:

> [E]ach lender requiring the establishment or continuance of a reserve account in connection with an existing or future real estate loan shall, on a yearly basis as of December 31, calculate and credit to the account interest on the average daily balance of funds deposited in the account at a rate equal to: (a) 5-1/2%; (b) the average of the 11th District monthly weighted average cost of funds index as calculated and published by the

Federal Home Loan Bank of San Francisco during the calendar year, less 1 1/2 percentage points; or (c) the statement savings rate or share account rate offered to the public for accounts of like size by the depository institution holding the reserve account.

15.    Connecticut, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, Oregon, Rhode Island, Vermont, and Wisconsin have similar statutes requiring financial institutions to pay borrowers interest on their escrow accounts.  *See* Conn. Gen. Stat. § 49-2a (Connecticut); ME. Rev. Stat. Ann. tit. 33, § 504 (Maine); MD. Comm. Law Code Ann. § 12-109 (Maryland); Mass. Gen. L. ch. 183, § 61 (Massachusetts); Minn. Stat. Ann. § 47.20, subd. 9(a) (Minnesota); N.H. Rev. Stat. Ann. § 397-A:9(IV) (New Hampshire); OR. Rev. Stat. §§ 86.205, 86.245 (Oregon); R.I. Gen. Laws § 19-9-2 (Rhode Island); Vt. Stat. Ann. tit. 8, § 10404 (Vermont); and Wis. Stat. § 138.052 (Wisconsin).

16.    Congress has mandated that "[i]f prescribed by applicable State or Federal law, each creditor shall pay interest to the consumer on the amount held in any impound, trust, or escrow account that is subject to this section in the manner as prescribed by that applicable State or Federal law." 15 U.S.C. § 1639d(g)(3).

17.    In or about August 2014, Plaintiffs purchased a single-family residence in Westchester County, New York.  In connection with that purchase, Plaintiffs entered into a loan agreement with Defendant, secured by a mortgage on the residence (the "Mortgage Agreement"). Since the time that Plaintiffs entered into the Mortgage Agreement, Plaintiffs have been required to make monthly payments to Defendant for the pre-payment of property taxes and insurance on the property, in addition to the regular monthly payments of principal and interest on the loan.

18.    During all times in which Plaintiffs have paid funds into the escrow account held by Defendant, Defendant has not paid Plaintiffs the interest mandated by NY Gen. Oblig. Law § 5-601.  Defendant has thereby violated New York law, while enriching itself through the free

5

use of the funds paid into the escrow account by Plaintiffs.[2]

## CLASS ACTION ALLEGATIONS

19.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class (hereinafter, the "Multi-State Class"):

> All customers of Defendant (or its subsidiaries) in the states of Connecticut, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New York, Oregon, Rhode Island, Vermont, Utah and Wisconsin who (i) entered into a loan with Defendant that was secured by a residence or cooperative apartment corporation; (ii) paid monies into an escrow account, held by Defendant, to cover the projected amount owed in taxes, insurance and other matters relating to the property securing the loan; and (iii) received from Defendant less than the amount of interest owed under the law of the state in which the property was located.

In the alternative, Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class (the "New York Class"):

> All customers of Defendant (or its subsidiaries) who (i) entered into a loan with Defendant that was secured by a one-to-six family residence located in New York or property owned by a cooperative apartment corporation located in New York; (ii) paid monies into an escrow account, held by Defendant, to cover the projected amount owed in taxes, insurance and other matters relating to the property or cooperative apartment corporation securing the loan; and (iii) received from Defendant less than the amount of interest required under NY Gen. Oblig. Law § 5-601.

Excluded from the Multi-State Class and the New York Class are Defendant's officers and directors and the immediate families of Defendant's officers and directors. Also excluded are Defendant and its subsidiaries, parents, affiliates, joint venturers, and any entity in which Defendant has or had a controlling interest.

20.     For purposes of the complaint, the term "Class" refers collectively to the Multi-State Class and the New York Class and the phrase "Class Members" refers to all members of

---

[2] Defendant's uniform policy of denying interest on escrow impound accounts is at odds with other mortgage lenders such as Wells Fargo Bank, N.A., the largest mortgage originator in the United States, which complies with New York law and pays interest on escrow accounts.

the Multi-State Class and/or New York Class.

21. Plaintiffs reserve the right under Rule 23 to amend or modify the Class descriptions with greater specificity or further division into subclasses or limitation to particular issues, based on the results of discovery.

22. This action has been brought and may properly be maintained as a class action against Defendant pursuant to the provisions of Fed. R. Civ. P. 23 because there is a well-defined community of interest in the litigation and the Class can be determined with reference to objective criterion.

23. **Numerosity of the Class. Rule 23(a)(1).** The members of the Class are so numerous that their individual joinder is impracticable. On information and belief the number of Class Members' mortgages held by Defendant is in the thousands or more. Inasmuch as the Class Members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of Class Members can be ascertained. Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

24. **Existence and Predominance of Common Question of Law and Fact. Rule 23(a)(2).** There are questions of law and fact common to the class. These questions predominate over any questions affecting only individual Class Members. These common legal and factual issues include, but are not limited to:

    a. Whether Defendant has systematically engaged in conduct that violates state and federal law with respect to the payment to its customers of the interest accrued on escrow accounts;

    b. Whether Defendant's conduct breached the mortgage agreements with its customers;

    c. Whether Defendant has been unjustly enriched by its illegal conduct;

      d.      Whether Defendant must provide damages, restitution and/or reimbursement to borrowers in the amount of unpaid interest on funds held in escrow impound accounts based on the causes of action asserted herein; and

      e.      Whether injunctive and/or declaratory relief is appropriate to prohibit Defendant from engaging in this conduct in the future.

25. **Typicality. Rule 23(a)(3).** The claims of the representative Plaintiffs are typical of the claims of each member of the Class. Plaintiffs, like all other members of the Class, have sustained damages arising from Defendant's violations of the laws, as alleged herein. The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by the same unlawful, systematic, and pervasive pattern of misconduct engaged in by Defendant.

26. **Adequacy. Rule 23(a)(4).** The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class Members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class Members.

27. **Injunctive and Declaratory Relief. Rule 23(b)(2).** Defendant's actions regarding its customers' escrow impound accounts are uniform as to members of the Class. Defendant has acted or refused to act on grounds that apply generally to the Class so that final injunctive relief as requested herein is appropriate with respect to the Class as a whole.

28. **Predominance and Superiority of Class Action. Rule 23(b)(3).** This suit may be maintained as a class action because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action

is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

29. The representative Plaintiffs contemplate the eventual issuance of notice to the proposed Class Members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, the representative Plaintiffs would contemplate the use of additional media and/or mailings.

30. In addition to meeting the prerequisites of a class action, this action is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

        i. Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

9

        ii.      Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

    b.    The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

    c.    Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

        i.      The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

        ii.      The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

        iii.      The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

        iv.      The difficulties likely to be encountered in the management of a class action.

## FIRST CAUSE OF ACTION

**Breach of Contract**
**(On Behalf of Plaintiffs and the Multi-State Class,**
**and in the Alternative on behalf of the New York Class)**

31.    Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

32.    Plaintiffs and Defendant entered into the Mortgage Agreement, wherein Plaintiffs were required to deposit funds into an escrow account and Defendant was expressly required to comply with all applicable state and federal laws in connection with the Mortgage Agreement. The relevant terms of the Mortgage Agreement, drafted by Defendant, are as follows:

    **3(b) Lender's Obligations.**

> Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. . . .  Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

* * *

> **16. Law That Governs this Security Instrument: Word Usage.**  This Security Instrument is governed by federal law and the law of New York State.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.

33. In reliance on Defendant's express agreement to comply with all applicable federal and state laws, Plaintiffs continuously made payments into their escrow account, as was required by the Mortgage Agreement.

34. Plaintiffs never received from Defendant -- through direct payment, credit to future payments or otherwise -- any interest accrued on the funds maintained in the escrow account on their behalf, in direct violation N.Y. Gen. Oblig. Law § 5-601.  Class Members in the states identified in the definition of the Class above also did not receive interest on their escrow accounts, in violation of uniform agreements Defendant had with members of the Class.

35. Because Defendant did not pay interest to Plaintiffs on funds paid into their escrow account, Defendant violated applicable state law and therefore was and is in breach of the Mortgage Agreement.  In the same way, Defendant violated its mortgage agreements with other Class Members residing in the states identified in the definition of the Class.

36. Plaintiffs and the Class Members were damaged by Defendant's breach of contract.

## SECOND CAUSE OF ACTION

**Unjust Enrichment**
**(In the Alternative to Breach of Contract**
**on Behalf of Plaintiffs and the Multi-State Class,**
**and in the Alternative on behalf of the New York Class)**

37. Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

38. Plaintiffs and the other members of the Class conferred a benefit on Defendant by paying money into escrow accounts, making that money fully useable by Defendant before payments from the escrow accounts on the mortgaged property were due.

39. As a result of Defendant's failure to comply with the laws of states that require payment of interest on escrow accounts, as identified in the definition of the Class, Defendant was enriched at the expense of Plaintiffs and the Class.

40. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and members of the Class.

41. Because Defendant's retention of the benefits conferred on it by Plaintiffs and other members of the Class would be unjust and inequitable, Plaintiffs seek restitution from Defendant and an order from the Court requiring Defendant to disgorge all profits, benefits, and other compensation obtained due to its wrongful conduct.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs ask the Court to enter a judgment:

A. Certifying the Class, certifying Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

B. Declaring that Defendant has committed the violations alleged herein;

  C.  Granting damages, restitution, and/or disgorgement to Plaintiffs and the Class;

  D.  Granting declaratory and injunctive relief to enjoin Defendant from engaging in the unlawful practices described in this Complaint;

  E.  Granting pre- and post-judgment interest;

  F.  Granting attorneys' fees and costs; and

  G.  Granting further relief as this Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury herein.

DATED:  January 20, 2020       **THE SULTZER LAW GROUP P.C.**

                   /s/ *Michael Liskow*
                   Janine L. Pollack
                   Michael Liskow
                   270 Madison Avenue, 18th Floor
                   New York, NY 10016
                   Telephone:  212-969-7810
                   Facsimile: 888-749-7747
                   pollackj@thesultzerlawgroup.com
                   liskowm@thesultzerlawgroup.com

                   C. Mario Jaramillo
                   **C. MARIO JARAMILLO, PLLC (D/B/A ACCESS LAWYERS GROUP)**
                   527 South Lake Avenue, Suite 200
                   Pasadena, CA  91101
                   Tel:  (877) 360-3383
                   Fax: (866) 686-5590
                   cmj@access.law

                   *Attorneys for Plaintiffs*